UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT PIKEVILLE

| | | |
|---|---|---|
| JAMES D. BIXLER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 12-CV-78-KKC |
| | ) | |
| V. | ) | |
| | ) | |
| GRADY PERRY, *et al.*, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

James Bixler, proceeding without an attorney, has filed a civil rights complaint [R. 1] and amended complaint [R. 5] asserting constitutional claims under 42 U.S.C. § 1983 against an inmate and various officials of the former Otter Creek Correctional Complex ("OCCC") which was located in Wheelwright, Kentucky.[1]  On July 24, 2012, the Court granted Bixler's motion to pay the filing fee in installments. [R. 4]

The Court must conduct a preliminary review of Bixler's complaint because it granted his request to pay the filing fee in installments and because he asserts claims against government officials. 28 U.S.C. §§ 1915(e)(2), 1915A.  A district court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  *McGore v. Wrigglesworth*, 114 F.3d 601, 607-08 (6th Cir. 1997).  The Court evaluates Bixler's complaint under a more lenient standard because he is not represented by an attorney.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Burton v. Jones*, 321 F.3d

---

[1] The OCCC is no longer in operation.  The named defendants are: (1) Grady Perry, former OCCC warden; (2) Renee Cornett, "ATC" Manager; (3) Amy Hughes, "BS/ATC" Counselor; (4) Ron Samons, "BS/ATC" Counselor; and (5) James Scott, "Inmate/Mentor."

1

569, 573 (6th Cir. 2003). At this stage, the Court accepts Bixler's factual allegations as true, and liberally construes his legal claims in his favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Having reviewed the complaint, the Court must dismiss it with prejudice because Bixler has failed to state a claim upon which relief can be granted.

I

Bixler states on September 21, 2011, while he was confined at OCCC, James Scott, his "Inmate/Mentor" in a drug program administered in the OCCC, made a profane and racially derogatory comment to him. [R. 1, p.2; R. 5, p.2] Bixler alleges that he reported Scott's comment to "ATC Counselor" Amy Hughes; that Hughes assured him that she would "handle the matter," but that the next day, Hughes informed him that she did not have time to look into it. [R. 1, p. 3; R. 5, p.3] Bixler states that on September 27, 2011, he filed a grievance complaining about Scott's comments to him and to other African-American inmates at OCCC and that two weeks later, "ATC Manager" Renee Cornett responded that Amy Hughes and Ron Samons had "'handled the situation.'" [*Id.*] Bixler contends that in reality, no one at the OCCC actually investigated his complaints about Scott.

Bixler states that although the Grievance Committee and the warden agreed that an investigation was required and that Scott should be removed as a mentor in the drug program, Scott nevertheless remained as a mentor in the drug program even after Bixler filed a second grievance on November 25, 2011. Bixler claims that in retaliation for filing grievances about Scott's statements and the staff's refusal to investigate his claims and/or reprimand Scott, the defendants removed him from the program and transferred him to another prison.

Bixler also alleges that he suffered from stomach problems; that OCCC staff were aware of

them; that he became ill and regurgitated in a bathroom facility which he was not authorized to use; and that the defendants used that incident as a pretext to transfer him to another prison.

Bixler alleges that Scott violated his Eighth Amendment right to be free from cruel and unusual punishment by making the allegedly derogatory comment, and that the OCCC staff violated his Fourteenth Amendment right to due process of law by refusing to investigate his complaints or take disciplinary action against Scott. [R. 5, p. 9; ¶ IV]

## II

Accepting as true all of Bixler's claims, he fails to allege a constitutional violation by any of the named defendants for several reasons. To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must establish "two elements: 1) the defendant acted under color of state law; and 2) the defendant's conduct deprived the plaintiff of rights secured under federal law." *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). A private citizen cannot ordinarily be liable under § 1983, unless the plaintiff proves that the he or she "deprived him of a guaranteed right under color of [state law], and ... that [his] actions were properly attributable to the state, *i.e.* that [he] qualified as a state actor." *Kelm v. Hyatt*, 44 F.3d 415, 421 (6th Cir. 1995) (citing *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 156 (1978)). Bixler alleges that inmate Scott acted as his mentor in the prison's drug program, but he does not allege, and nothing in the documents he attached suggest, that Scott was an OCCC employee, official, or other type of "state actor" who could be subject to liability under the Eighth Amendment.

Even assuming that Scott qualified as an OCCC official, he would not be liable under the Eighth Amendment for the racially derogatory comment he allegedly made to Bixler. Disparaging comments, verbal abuse, or harassment in the prison context, while not condoned, do not constitute

the type of conducted prohibited by the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987); *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003).

Bixler's allegation that the other OCCC defendants transferred him to another prison in retaliation for filing grievances about Scott's comments to him also fails to state a claim. The First Amendment forbids retaliation against a prisoner for exercising his or her constitutional rights. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). To establish a First Amendment retaliation claim, the plaintiff must prove that: 1) the plaintiff engaged in activities protected by the Constitution or statute; 2) the defendant took an adverse action that would deter a person of ordinary firmness from continuing to engage in that conduct; and 3) that this adverse action was taken at least in part because of the exercise of the protected conduct. The plaintiff has the burden of proof on all three elements. *Murray v. Evert*, 84 F. App'x 553, 556 (6th Cir. 2003); *Green v. Tudor*, 685 F. Supp. 2d 678, 692 (W.D. Mich. 2010).

Bixler can not establish the first element of his retaliation claim - that he was engaged in constitutionally protected conduct. An inmate has a First Amendment right to file grievances against prison officials, but that right is protected only if the grievances are not frivolous. *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2010). "Depriving someone of a frivolous claim ... deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions." *Lewis v. Casey*, 518 U.S. 343, 353 (1996); *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002); *Wade-Berry v. Fluery*, No. 2:07-cv-117, 2008 WL 2714450, at *6 (W.D. Mich. July 8, 2008). As discussed, verbal abuse, while not condoned, can not be the basis of a constitutional violation. *Ivey*, 832 F.2d at 954-55. Thus, to the extent that Bixler complained in grievances about

verbal abuse at the hands of "Inmate/Mentor" Scott and/or any of the OCCC staff, his grievances were frivolous, and alleged retaliation can not be predicated on the filing of frivolous grievances. *See Scott v. Kilcherman*, No. 99-1711, 2000 WL 1434456 (6th Cir. Sept. 18, 2000) (holding that prisoner's frivolous grievance would not support First Amendment retaliation claim). Bixler's First Amendment retaliation claim will be dismissed with prejudice for failure to state a claim.

Finally, Bixler's allegation that the OCCC defendants violated his due process rights by denying his administrative grievances and failing to reprimand James Scott fails as a matter of law. Prisoners have no inherent constitutional right to an effective prison grievance procedure. *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Overholt v. Unibase Data Entry, Inc.*, No. 98-3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991). Nor does a prison official violate an inmate's constitutional rights merely by denying his or her grievance. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Alder v. Corr. Medical Services*, 73 F. App'x 839, 841 (6th Cir. 2003); *see also Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."). Bixler's due process claims must therefore also be dismissed.

### III

Accordingly, **IT IS ORDERED** that:

1. James D. Bixler's complaint [R. 1] and amended complaint [R. 5] are **DISMISSED WITH PREJUDICE**.

2. The Court will enter an appropriate judgment.

5

3.  This action is **STRICKEN** from the active docket.

Dated this February 5, 2013.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge